**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-mj-8675-SMM**

**IN RE SEALED COMPLAINT**
________________________________/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Vitaliy Kats*
Vitaliy Kats (FL Bar 118748)
Assistant United States Attorney
500 South Australian Ave, Suite 400
West Palm Beach, Florida
Tel: (561) 209-1069
Email: vitaliy.kats@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.
MICHAEL ANTHONY MURDOCK JR.

*Defendant(s)*

Case No. 26-mj-8675-SMM

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 29, 2026 in the county of Palm Beach in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 115(a)(1)(B) | Threatening to Murder a Federal Official |

FILED BY TM D.C.
Aug 28, 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

DUSM Tyler Deputy
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: August 28, 2026

*Judge's signature*

City and state: West Palm Beach, FL

Hon. Shaniek M. Maynard, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Tyler Deputy, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Deputy United States Marshal with the United States Marshals Service (USMS) and have been since October 2022. I am a federal law enforcement officer within the meaning of Title 18, United States Code Section 2510(7). That is, I am an officer of the United States, who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18, United States Code, Sections 111, 115, 875, 876, 2261, *et seq*.

2. I am currently assigned to the West Palm Beach local office in the Southern District of Florida, and I investigate threats to members of the federal judiciary. Specifically, my duties and responsibilities include providing protection to federal judges and investigating the source of viable threats to harm federal judges.

3. I have conducted and assisted in numerous federal criminal investigations in which I have executed federal search warrants on electronic accounts held by electronic communication providers such as Google, Inc. Specifically for threat investigations, I have been trained on the various law enforcement techniques that are used to identify, locate, and arrest persons accused of threatening members of the federal judiciary.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that a violation 18 U.S.C. § 115(a)(1)(B) has been committed by MICHAEL ANTHONY MURDOCK JR. (hereinafter "MURDOCK")—that is, MURDOCK threatened to murder a federal official with the intent to retaliate against that federal official for performance of their official duties.

## PROBABLE CAUSE

**First Incident Dated June 17, 2026**

5. On June 17, 2026, a District Security Officer was assigned to provide security for Magistrate Court at the Paul G. Rogers Federal Building and U.S. Courthouse (the "Courthouse") in West Palm Beach, Florida, in the Southern District of Florida.

6. The Security Officer observed a then-unidentified black male making hand gestures toward one of the inmates who had a hearing in Magistrate Court that morning. The inmate later was identified as Gavlyn Renard Hooks (Case No. 9:26-cr-80132-EA). The black male making the hand gestures later was identified as MURDOCK.

7. The Security Officer believed the hand gestures to be gang-related, so he instructed MURDOCK to cease making them. MURDOCK, however, persisted in making the gestures, so the security officer again approached MURDOCK and asked him to leave the Courthouse. MURDOCK reacted angrily and made aggressive verbal statements to the Security Officer, but he ultimately was escorted from the Courthouse that day without further incident.

**Second Incident Dated June 29, 2026**

8. On June 29, 2026, Gavlyn Renard Hooks had another hearing in Magistrate Court.

9. That same day, at approximately 10:30 a.m., a Deputy U.S. Marshal was leaving Courtroom 4 of the Courthouse. As the Deputy Marshal left the courtroom, he noticed an individual who was walking in the opposite direction toward the courtroom. The Deputy Marshal recognized this individual as the black male who previously had been escorted out of the Courthouse on June 17, 2026 (later determined to be MURDOCK).

10. As they walked past each other, the Deputy Marshal saw MURDOCK form his fingers into the shape of a gun and point the fingers at the Deputy Marshal. Simultaneously, the

Deputy Marshal heard MURDOCK say, "Bop, bop," mimicking the sound of gunfire. The Deputy Marshal further heard MURDOCK say, "I don't give a f**k bout nobody."

11. Due to MURDOCK'S inappropriate behavior, the U.S. Marshal's Office directed a Court Security Officer to escort MURDOCK out of the Courthouse for a second time.

12. Consistent with these directions, a Court Security Officer (the "VICTIM") went to the fourth floor of the Courthouse and saw MURDOCK speaking to two other people in the hallway. The VICTIM was able to escort MURDOCK down to the first floor of the Courthouse. The VICTIM then explained to MURDOCK that he was being asked to leave the Courthouse because of the finger-gun gesture he made toward a Deputy Marshal earlier that morning.

13. Upon hearing the reason for his removal, MURDOCK became extremely angry and told the VICTIM that he would return to the Courthouse to shoot him in the head.

14. MURDOCK's threat to shoot the VICTIM was preceded by threatening hand gestures and racial slurs also directed toward VICTIM.

15. With the help of other Court Security Officers, MURDOCK was removed from the building, but he continued his disruptive behavior and hand gestures outside of the Courthouse until he was approached by parking security and agents from the Federal Protective Service.

16. At that point, MURDOCK finally left the Courthouse.

17. CCTV footage from June 29, 2026, shows MURDOCK leaving the courthouse and heading south towards Clematis Street. Before getting to Clematis Street, MURDOCK looks towards the direction of Court Security Officers and makes another finger-gun gesture. Using one hand, MURDOCK then mimics a handgun and directs the gesture to his temple:





18. CCTV footage also captured MURDOCK's face as he was turning back to look toward the direction of the Courthouse:



**Gavlyn Hooks' Identification of the Individual as "Tony"**

19. On July 13, 2026, Gavlyn Renard Hooks was transported back to the Courthouse for a status conference in his case. Following the status conference, Hooks was placed in a holding

cell in the U.S. Marshal's cellblock pending completion of duty court, before being transported back to the Palm Beach County Sheriff's Office Main Detention Center.

20. At approximately 1200 hours, two Deputy U.S. Marshals approached Hooks and told him that a report had to be written about the June 29 removal incident, during which MURDOCK threatened to shoot the VICTIM.

21. One of the Deputy Marshals asked Hooks whether he knew the individual who had been escorted out of the Courthouse that day. Hooks said he knew the individual as "Tony" and that "Tony" was a "brother" in the sense that he was an acquaintance.

22. Hooks did not provide any additional identifiers and advised the Deputy Marshals that he did not wish to speak on the matter further.

23. Also on July 13, 2026, the same two Deputy U.S. Marshals screened and listened to phone calls made by Hooks at the Main Detention Center of the Palm Beach County Sheriff's Office. After his appearance in Court, Hooks made a phone call to ***-***-8458 and addressed the individual on the other end of the call as "Tony."

24. Law enforcement databases attribute that phone number to MURDOCK.

**Identification of MURDOCK by Court Personnel**

25. On July 17, 2026, a six-person photo array was compiled with one image of MURDOCK and five filler non-suspect photographs.

26. A blinded sequential photo array was administered to the VICTIM who had been threatened with being shot in the back of the head on June 29, 2026.

27. The VICTIM circled, signed, and dated the image of MURDOCK from the six-person photo array, indicating MURDOCK was the individual who threatened him.

28. On July 17, 2026, a blinded sequential photo array was administered to another security officer who was present for the incident on June 29, 2026. This security officer circled, signed, and dated the image of MURDOCK as the individual who was escorted off premises.

**Status of the VICTIM**

29. At the time of the incident on June 29, 2026, the VICTIM had a Special Deputation from the United States Marshals Service that enabled him to "enforce federal law while in the performance of assigned duties under government contract."

30. The Special Deputation states that the VICTIM is authorized "under the Authority of the Attorney General" to "exercise the authority of a Special Deputy United States Marshal in fulfilling the responsibilities of a Contract Security Officer and/or Special Security Officer."

**CONCLUSION**

31. Based on the foregoing, the facts set forth in this affidavit establish probable cause to believe that MICHAEL ANTHONY MURDOCK JR. has committed a criminal offense in violation of 18 U.S.C. § 115(a)(1)(B), that is, threatening to murder a federal official with intent to retaliate against that official for performance of their official duties.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

(*Remainder of Page Intentionally Left Blank*)

Respectfully submitted,

TYLER DEPUTY
United States Marshal Service

Subscribed and sworn to before me, by videoconference, in accordance with the requirements of Fed. R. Crim. P. 4.1, on this 28th day of August 2026.

HON. SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**: Michael Anthony Murdock Jr.

**Case No: 26-mj-8675-SMM**

Count #: 1

Threatening to Murder a Federal Official

18 U.S.C. § 115(a)(1)(B), (b)(4)

*** Max. Term of Imprisonment: 10 years**
*** Mandatory Min. Term of Imprisonment (if applicable): N/A**
*** Max. Supervised Release: 3 years**
*** Max. Fine: $250,000**
*** Special Assessment: $100 upon conviction**

***Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**